MRS. EVA ANGLE v. J. J. TERRELL, COMMISSIONER, ET AL.

No. 1266. Decided April 25, 1904.

**Public Land—Lease—Cancellation—Reletting—Payment of Arrears.**

Section 22 of the Act of April 4, 1895 (Rev. Stats., art. 4218v) which prohibited the reletting of public lands to one whose previous lease thereof should be canceled for nonpayment of rent until all arrears were fully paid,— a restriction not embraced in the previous law (sec. 17, Act of April 1, 1887),—did not apply to leases so canceled prior to its enactment; nor could such restriction be deduced from section 20 of the Act of 1895, granting certain rights to lessees in arrears on their rent contracts. (Pp. 510-513.)

Original application to the Supreme Court for writ of mandamus to require the Commissioner of the General Land Office to accept the application of relatrix to purchase certain school lands claimed under lease by Keith, who was joined as respondent.

*D. H. Meeks,* for relatrix.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant, for respondent Terrell.

*West & Cochran* and *E. Cartledge,* for respondent Keith.

GAINES, CHIEF JUSTICE.—This suit was instituted by Mrs. Eva Angle against the Commissioner of the General Land Office to compel him to accept applications made by her to purchase four sections of school land. According to the allegations of her original petition, she applied to purchase one of these sections as her home section and the other three as additional lands, lying within a radius of five miles of the home tract. It was also averred in the petition that her applications were rejected upon the ground that the lands were held by Seaton Keith under a lease from the State. Keith was made a party defendant. The applications to purchase were made on the 12th day of June, 1903, and the original petition was filed on the 16th day of November of the same year. The Commissioner answered asserting that the lands were under lease to Keith. Keith in his answer alleged the same fact and further averred that if it was true, as alleged in the petition, that the relatrix had on the 12th day of June, 1903, actually settled on the tract she sought to purchase as a home section, she had since that time abandoned her residence thereon. This answer presented a question of fact which this court has no power to determine, and would have resulted in a dismissal of the case. But on the 29th of February, 1904, the relatrix filed an amended petition in which she alleged, that having on the 28th day of December, 1903, actually settled in good faith on one of the sections in controversy, she made application on that day to purchase it together with the three other sections originally applied for, and that this application had also been refused upon the same ground upon which her first application was denied. The facts alleged in the amended petition have not been controverted; nor is it averred in the answers of respondent that the settlement of December 28, 1903, had ever been abandoned. The case therefore turns upon the question of the validity of the lease to the defendant Keith.

Neither are the facts alleged in the petition for the purpose of showing the invalidity of the lease controverted by the answers. They are as follows: On the 11th day of December, 1890, the sections in controversy, together with several others, were leased by the Commissioner of the General Land Office to Keith for a term of ten years, beginning December 6, 1890. The lessee paid the annual rent in advance as required by law for the years beginning December 6, 1890, 1891 and 1892, but defaulted on the payment due December 6, 1893. On the 21st of March, 1894, the lease was canceled by the Commissioner for the nonpayment of rent. On the 7th day of Otober, 1897, the Commissioner again leased all the lands embraced in the original lease to Keith for the term of ten years, without payment of the rent which had accrued, and which was in arrear under the first lease. In behalf of the relatrix it is urged that by reason of the fact that the arrears of rent were not paid, the second lease is void. This presents the question in the case.

At the time the first lease was executed the act approved April 1, 1887, was in force. The seventeenth section of that act reads as follows:

"Sec. 17. If any lessee shall fail to pay the annual rent due in ad-

vance for any year, within sixty days after such rent shall .become due, the Commissioner of the General Land Office may declare such lease canceled, by a writing under his hand and seal of office, which writing shall be filed with the papers relating to such lease, and thereupon said lease shall immediately terminate, and the lands so leased shall become subject to purchase or lease, as the Commissioner may determine for the best interest of the State. And during the continuance of all leases, and after forfeiture, the State shall have a lien upon all the property upon the leased premises to secure the payment of all rents due, which lien shall be prior and superior to all other liens whatsoever, and it shall not be essential to the preservation or validity of such lien that it shall be reserved in the instrument of lease."

It is clear that the section places no restrictions upon a second lease of school lands, by former lessees, whose leases had been forfeited. But it is urged that under the twenty-second section of the Act of 1895, which is incorporated in the Revised Statutes as article 4218v, the Commissioner of the General Land Office was without power to lease the lands a second time to Keith, until he had paid the rent which fell due under his former lease. That article is as follows:

"Art. 4218v. If any lessee shall fail to pay the annual rent due in advance for any year within sixty days after such rents shall become due, the Commissioner of the General Land Office may declare such lease canceled by a writing under his hand and seal of office, which writing shall be filed with the other papers relating to such lease, and thereupon such lease shall immediately terminate, and the lands so leased shall become subject to purchase or lease under the provisions of this chapter. Such lease shall not be made to original lessees until all arrears are fully paid. During the continuance of all leases, and after forfeiture, the State shall have a lien upon all property owned by the lessee upon the leased premises to secure the payment of all rents due, which lien shall be superior to all other liens whatsoever; and it shall not be essential to the preservation or validity of such lien that it shall be reserved in the instrument of lease."

It is to be noted that Keith's first lease was declared forfeited in March, 1904; and that the act relied upon to show the invalidity of the second was not passed until 1895. Was it intended that section 22 of that act (article 4218v of the Revised Statutes) should apply to forfeitures that had already occurred, when the act should take effect? We think not. The language of the section is clearly prospective. The first clause of the section declares it the duty of the Commissioner in case a lessee "shall fail to pay the annual rent," etc., to declare the lease forfeited, and prescribes that when so declared the lands "shall become subject to purchase or lease under the provisions" of the act. Manifestly these provisions are applicable to future events only. They could not by any reasonable, not to say possible construction, apply to forfeitures which had already occurred. We think it equally manifest that the words, "such lease shall not be made to original lessees until all arrears

are fully paid," means the leases mentioned in the provision which immediately precedes, that is, leases authorized upon forfeitures thereafter to be incurred. It is true that by a broad interpretation the word "such" may be construed to mean "of a like character," and the provision in question might possibly be held to apply to the lease of all forfeited lands. But we think the context forbids such construction. If the Legislature had intended to include in the provision lands theretofore forfeited as well as lands that should thereafter be forfeited, they could easily have expressed that intent, by the addition of a very few words. Not having done so we think it should be presumed that they did not so intend. Why leave their will to be deduced from a very doubtful implication, when their purpose could have been so easily and clearly expressed? We think also that a good reason existed for not making the provision under construction applicable to forfeitures which had not already accrued. The provision may have been prompted by one of two considerations—possibly by both. One may have been to prevent forfeitures. If such was the purpose, it is clear that forfeitures which had already been declared did not come within its scope. The other may have been to promote the enforcement of the payment of arrears of rent upon forfeited lands. This would be applicable alike to leases already forfeited and to those thereafter to be forfeited. But again, it may have been considered that it was hardly fair to attach a conditional disability to lessees who had previously forfeited their leases, which under the law did not attach when the forfeiture was suffered. At all events in our opinion the Legislature in passing section 22 had in mind only future forfeitures and did not intend to make any of the provisions applicable to those which had occurred before the act should take effect.

It is, however, insisted on behalf of the relatrix that section 20 of the Act of 1895 tends to show that the provision as to leasing forfeited lands by the original lessees applied as well to past as to future forfeitures. This section was repealed at the same session of the Legislature at which the Act of 1895 was passed, and within less than two weeks after its passage, and we incline to think that it is entitled to but little consideration in the construction of any other section of the act. This section provided that lessees, who were "one year or more in arrears on their contracts for rent" should have the right for four months to execute obligations with personal security for the arrears of rent, and upon their doing so to have their leases canceled and to take a new lease of the same lands. It also gave the right to lessees who were not in default, or who should pay the arrears, to surrender their leases and lease anew the lands under the provisions of the act. Now we understand the argument to be that since section 20 required lessees already in default to pay or secure the arrears of rent due the State as a condition precedent to procuring a new lease, it is inconsistent to hold that it was intended by section 22 to allow those whose leases had been forfeited to lease the same lands a second time without complying with a like condition. It is not clear to our minds what was the purpose of the

Legislature in enacting section 20 in so far as it applies to lessees in default. Lessees whose leases had been forfeited were not mentioned eo nomine; and we are of the opinion that they were not intended to be embraced in the provisions of that section. In one place it is said that those who execute the requisite obligations for their arrears "shall have the right to have their lease contracts canceled and may lease such lands anew under this act." In another it provides that lessees who are not in arrears, and lessees who shall pay all indebtedness due on their leases, "may surrender their leases" and lease anew the same lands under the provisions of the act. Since a lease which has already been annulled by a forfeiture is already "canceled," and since there is no need of its "surrender," we fail to see that this section applies to lessees whose leases had been forfeited. The Act of 1887 provided that upon the failure of the lessee to pay the annual rent for sixty days from the time it fell due, "the Commissioner may declare such lease canceled;" and it may be that at the time the act in question was passed that language had been construed as permissive only, and that there were leases in existence upon which default had been made, and which had not been declared forfeited.

Our conclusion is that the Commissioner had power to lease the lands to Keith a second time, without requiring him to pay the arrears due upon his previous contract, and that therefore the writ of mandamus should be refused. It is accordingly so ordered.

*Mandamus refused.*